# EXHIBIT 1

EFiled: Mar 26 2025 03:29PM EDT
Transaction ID 75940804
Case No. N25C-03-315 PAW CCLD

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| IAN BEHAR, DANIEL BLUMKIN, and RYAN SASSON,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY, ARGONAUT INSURANCE COMPANY, and RSUI INDEMNITY COMPANY,<br><br>Defendants. | C.A. No. _____________ (CCLD)<br><br>**TRIAL BY JURY OF TWELVE DEMANDED** |

**COMPLAINT**

Plaintiffs Ian Behar ("Behar"), Daniel Blumkin ("Blumkin") and Ryan Sasson ("Sasson," and together with Behar and Blumkin, the "Plaintiffs"), for their Complaint against Defendants Federal Insurance Company ("Federal"), Argonaut Insurance Company ("Argonaut") and RSUI Indemnity Company ("RSUI," and together with Federal and Argonaut, the "Defendants"), allege, with knowledge as to their own acts and on information and belief as to the acts of all others, as follows:

**NATURE OF ACTION**

1. This is an insurance coverage lawsuit for breach of contract, bad faith and declaratory relief arising out of Defendants' failure and refusal to honor their contractual and legal obligations to Plaintiffs in connection with insurance policies they sold to Strategic Family, Inc., a Delaware corporation ("Strategic Family"), for

the benefit of Strategic Family's directors and officers. Plaintiffs served as directors and/or officers of Strategic Family during all relevant times.

2. On January 10, 2024, the Consumer Financial Protection Bureau ("CFPB") filed a complaint against Plaintiffs alleging violations of, among other things, the Telemarketing Act, Telemarketing Sales Rule, Consumer Financial Protection Act and various state statutes in connection with and based on their roles as directors and/or officers of Strategic Family, Inc. and related entities and subsidiaries (the "CFPB Action"). On May 28, 204, the CFPB filed its Second Amended Complaint, which is the current operative complaint for the CFPB Action. A true and correct copy of the Second Amended Complaint in the CFPB Action is attached as Exhibit A and incorporated herein by reference.

3. Although Plaintiffs have incurred, and continue to incur, significant defense costs in connection with the CFPB Action, Defendants have refused to acknowledge that they have coverage obligations to Plaintiffs and, instead, have asserted or adopted unreasonable coverage positions in attempting to avoid coverage under the policies. Through this action, Plaintiffs seek reimbursement, compensatory damages, consequential damages and punitive damages for Federal's breach of contract and bad faith refusal to honor its contractual obligations. Plaintiffs also seek declaratory relief with respect to Defendants' coverage obligations for the CFPB Action.

## THE PARTIES AND JURISDICTION

4. Strategic Family is a corporation organized under the laws of the State of Delaware, with its principal place of business in New York, New York. On or around January 11, 2024, Strategic Family was forced into a temporary receivership and its and the Plaintiffs' assets were frozen pursuant to a Temporary Restraining Order.

5. Plaintiff Ian Behar is one of the founders of Strategic Family and was a member of its Board of Directors.

6. Plaintiff Daniel Blumkin is one of the founders of Strategic Family and was its Chief Sales Officer. Mr. Blumkin was also a director on Strategic Family's Board of Directors.

7. Plaintiff Ryan Sasson is one of the founders of Strategic Family and was its Chief Executive Officer. Mr. Sasson was also a director on Strategic Family's Board of Directors.

8. Federal is an insurance company organized under the laws of the State of Indiana, with its principal place of business in Philadelphia, Pennsylvania. Federal has written insurance policies covering risks for Delaware citizens and/or is otherwise transacting insurance business in the State of Delaware. Federal is part of the Chubb Group of insurance companies and is a subsidiary of Chubb Limited.

9. Argonaut is an insurance company organized under the laws of the State of Illinois, with its principal place of business in Cook County, Illinois. Argonaut has written insurance policies covering risks for Delaware citizens and/or is otherwise transacting insurance business in the State of Delaware.

10. RSUI is an insurance company organized under the laws of the State of Georgia, with its principal place of business in Atlanta, Georgia. RSUI has written insurance policies covering risks for Delaware citizens and/or is otherwise transacting insurance business in the State of Delaware.

**THE CFPB ACTION**

11. On January 10, 2024, the CFPB filed a complaint, captioned *Consumer Financial Protection Bureau, et. al. v. Stratfs, LLC (f/k/a Strategic Financial Solutions), et. al.*, Case No. 24-cv-40-EAW-MJR, in the United States District Court for the Western District of New York (the "CFPB Complaint"). The CFPB Complaint names Strategic Family, Strategic Family's affiliates, Behar, Blumkin and Sasson as defendants, and alleges various violations of the Telemarketing and Consumer Fraud and Abuse Prevention Act (the "Telemarking Act"), the Telemarketing Sales Rule ( the "TSR"), the Consumer Financial Protection Act of 2010, and various state statutes.

12. More specifically, the CFPB Complaint alleges that Plaintiffs, by and through Strategic Family and its subsidiaries, operated a debt-relief scheme that

collected excessive advance fees from consumers suffering financial difficulties. It further alleges that Strategic Family, by and through its subsidiaries, encouraged financially distressed consumers to enroll in Strategic Family's debt-relief service by promising access to a network of lawyers who would negotiate with the consumers' creditors and defend consumers in the event of a creditor lawsuit. The CFPB Complaint then alleges, in actuality, that those lawyers performed little to no work on behalf of consumers and consumers were left with more debt than they started with, as they were required to advance fees for the debt-relief services.

13. With respect to the Plaintiffs, it is alleged that they conducted this operation by creating a web of interrelated companies, including Strategic Family and various shell companies that funneled money from Strategic Family's businesses to the Plaintiffs. The CFPB Complaint further alleges Plaintiff Sasson created façade law firms that performed little to no work on behalf of consumers.

14. The CFPB Complaint also alleges each Plaintiff, either acting alone or in concert with each other, exercised substantial control over and involvement in the establishment of business policies and practices described in the CFPB Complaint for Strategic Family and its subsidiaries. Each Plaintiff also allegedly exercised managerial responsibility for these companies.

15. Plaintiff sought indemnification from Strategic Family against any and all expenses (including attorneys' fees), judgments, fines and amounts paid in

settlement incurred by them in response to the CFPB Action. On April 18, 2024, the Receiver for Strategic Family denied Plaintiffs' request for indemnity, thereby triggering Insuring Clause (A) under the Directors & Officer's Liability Coverage Part of the Policies (as defined below).

## THE INSURANCE POLICIES[1]

16. Federal issued Directors & Officers Liability Policy No. 8260-9085 to Strategic Family for the Policy Period of August 31, 2023 to August 31, 2024 (the "Federal Policy"). A true and correct copy of the Federal Policy is attached as Exhibit B and incorporated herein by reference.

17. Insuring Clause A of the Federal Policy provides that "[t]he Company shall pay, on behalf of an Insured Person, Loss on account of a Claim first made against the Insured Person during the Policy Period, or the Extended Reporting Period if applicable, to the extent that such Loss is not indemnified by the Organization."

18. The Federal Policy further provides that "[t]he Company shall have the right and duty to defend any Claim covered by this Coverage Part." To be sure, Federal's duty to defend applies "even if any of the allegations are groundless, false

[1] Capitalized terms not defined herein have the meaning given to them in the respective policies.

or fraudulent" and only "cease[s] upon exhaustion of the applicable Limit of Liability."

19. Endorsement 8 of the Federal Policy further provides that "if an Organization refuses in writing, or fails within 60 days of an Insured Person's written request for indemnification, to advance, pay or indemnify an Insured Person for Loss on account of a Claim, then upon the reporting of the Claim . . . , the Company shall advance covered Defense Costs until such time that the Organization accepts the Insured Person's request for indemnification or the applicable Limit of Liability . . . , whichever occurs first."

20. Strategic Family is the "Organization" as that term is defined in the Federal Policy.

21. Each of the Plaintiffs are an "Insured Person," as that term is defined in the Federal Policy.

22. The Federal Policy defines "Loss" to mean, among other things, "compensatory damages," "punitive, exemplary or multiplied damages, if and to the extent such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages," "civil fines or civil penalties," "judgments, including pre-judgment and post-judgment interest," "settlements," and "Defense Costs."

23. The Federal Policy defines "Defense Costs" to include "reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses . . . incurred in investigating, defending, opposing or appealing any Claim . . . ."

24. Defense Costs also include "Asset Protection Costs," which in turn are defined to mean "that portion of Defense Costs constituting reasonable costs, charges, fees and expenses incurred by an Executive, with the Company's consent, to oppose any efforts by an Enforcement Unit to seize or otherwise enjoin the personal assets or real property of such Executive or to obtain the discharge or revocation of a court order entered during the Policy Period in any way impairing the use thereof." Federal's maximum aggregate Limit of Liability for such Asset Protection Costs are $250,000. Given the Receivers' asset freeze orders, this coverage has also been triggered and is applicable.

25. "Claim" is defined to include, among other things, any "civil proceeding commenced by service of a complaint or similar pleading . . . against an Insured Person for a Wrongful Act, including any appeal therefrom."

26. The Federal Policy defines a "Wrongful Act" as "any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted to allegedly committed or attempted by . . . any Insured Person while acting in his or her capacity as such or any matter claimed against any Insured Person solely by reasonable of his or her status as such . . ."

27. The Federal Policy further states in Section (X) entitled Priority of Payments, that "in the event of Loss arising from a Claim for which payment is concurrently due under Insuring Clause (A), Individual Non-Indemnified Liability Coverage, and one or more of the other Insuring Clauses of this Coverage Part, the Company shall: (1) first, play Loss for which coverage is provided under Insuring Clause (A) . . ."

28. The Federal Policy provides $3,000,000 in limits with no retention for Insuring Clause A- Individual Non-Indemnified Liability Coverage. The Federal Policy also provides an additional $500,000 Additional Limit of Liability Dedicated for Executives that is in excess of its $3,000,000 limits. Both limits are applicable here.

29. Argonaut issued excess Policy No. MLX4261406-2 to Strategic Family for the Policy Period of August 31, 2023 to August 31, 2024 (the "Argonaut Policy"). A true and correct copy of the Argonaut Policy is attached as Exhibit C and incorporated herein by reference. The Argonaut Policy provides limits of $2 million excess of $3 million underlying insurance and follows form to the Federal Policy.

30. RSUI issued excess Policy No. HS706856 to Strategic Family for the Policy Period of August 31, 2023 to August 31, 2024 (the "RSUI Policy," and together with the Federal Policy and the Argonaut Policy, the "Policies"). A true and correct copy of the RSUI Policy is attached as Exhibit D and incorporated herein

by reference. The RSUI Policy provides limits of $2 million excess of $5 million underlying insurance and follows form to the Federal Policy.

31. All conditions and requirements imposed by the Policies on the Plaintiffs, including, among other things, payment of premiums and timely notice of claims have been satisfied and/or have been waived and/or are subject to an estoppel or other avoidance against Defendants by reason of Defendants' conduct and/or by operation of law.

**DEFENDANTS' DUTY TO DEFEND OBLIGATIONS**

32. The CFPB Action constitutes a "Claim" against the Plaintiffs that was first made against the Plaintiffs during the Policy Period of the Policies for a Wrongful Act.

33. In response to the CFPB Complaint, the Plaintiffs have and continue to incur significant amounts of Loss, including Defense Costs and Asset Protection Costs, as those terms are defined in the Policies.

34. In response to the Plaintiffs' claim for coverage in connection with the CFPB Complaint, Federal has denied coverage. In doing so, Federal has asserted coverage positions that lack any reasonable basis in the facts or the law and has refused to pay any portion of the amounts incurred by the Plaintiffs for the defense of CFPB Action.

35. More specifically, Federal has asserted that all coverage for the CFPB Complaint is barred by the professional services exclusion in the Federal Policy, notwithstanding the fact that the CFPB Complaint does not allege rendering, or the failure to render, professional services. Federal takes this position with respect to Plaintiffs' claim, even though, upon information and belief, Federal and/or Chubb have taken inconsistent coverage positions with other insureds in other coverage litigation.

36. Further, despite its clear duty to defend, Federal has failed to provide Plaintiffs with a defense and has not paid a single dime of the Plaintiffs' Defense Costs to date in connection with the CFPB Complaint, which is in excess of $2 million. In addition, Federal has an ongoing duty to defend the Plaintiff which it continues to deny.

37. Upon information and belief, Argonaut and RSUI, whose policies follow form to the Federal Policy, have adopted Federal's coverage denial position.

**COUNT I**

Breach of Contract (Against Federal)

38. Plaintiffs repeat and re-allege the foregoing allegations, which are incorporated, in full, by this reference.

39. The Federal Policy is a binding and enforceable agreement.

40. Plaintiffs have satisfied all their obligations under the Federal Policy.

41. Plaintiffs timely notified Federal of the CFPB Complaint pursuant to the terms of the Federal Policy and/or applicable law.

42. The CFPB Complaint constitutes a "Claim" against the Plaintiffs that was first made against the Plaintiffs during the Policy Period of the Policies for a Wrongful Act. In response to the CFPB Complaint, Plaintiffs have and continue to incur significant amounts of Loss, including Defense Costs, as those terms are defined in Federal's Policy.

43. Federal denied all coverage and failed to defend the Plaintiffs as required by the Federal Policy and/or otherwise acknowledge its insuring obligations to the Plaintiffs.

44. By its conduct, including, but not limited to, its failure and refusal to defend the Plaintiffs, Federal has breached the Federal Policy.

45. As a direct result of the foregoing breach, Plaintiffs have been denied the benefits of insurance coverage for which Federal collected substantial premiums and have suffered damages in an amount to be proven at trial, including all incidental and consequential damages proximately resulting from Federal's breach of contract.

**COUNT II**

Bad Faith (Against Federal)

46. Plaintiffs repeat and re-allege the foregoing allegations, which are incorporated, in full, by this reference.

47. Federal has no reasonable basis for refusing to defend the CFPB Action and upon information and belief, has purposefully and unreasonably denied its obligations to the Plaintiffs without conducting an investigation.

48. Federal knew that, at the same time that it was denying coverage to Plaintiffs under the Professional Services exclusion of the Federal Policy, it or one of its subsidiaries or affiliated companies, was advancing factually and legally inconsistent arguments in other litigation in order to avoid coverage to other insureds.

49. No reasonable insurer would conduct itself as Federal has with respect to the Plaintiffs' coverage claim, and Federal's decision to conduct itself in this manner is a purposeful, wrongful and bad faith attempt to evade paying amounts for which it is contractually responsible. In short, Federal has acted with knowledge of the lack of a reasonable basis for its refusal to defend the Plaintiffs. Its refusal to provide coverage is intentional, malicious and/or in reckless disregard of the rights of the Plaintiffs and constitutes gross and outrageous conduct meriting punitive damages.

50. As a direct and proximate cause of the aforesaid actions by Federal, Plaintiffs have suffered damages, including the costs of bringing this lawsuit and this bad faith claim, and extra contractual damages in an amount to be determined at trial.

**COUNT III**

Declaratory Relief (Against All Defendants)

51. Plaintiffs repeat and re-allege the foregoing allegations, which are incorporated, in full, by this reference.

52. An actual, present and justiciable controversy exists between the Plaintiffs and Defendants with respect to the Plaintiffs' rights and Defendants' obligations under the Policies.

53. Wherefore the Plaintiffs seek a declaratory judgment that:

a. Defendants have a duty to defend the Plaintiffs in connection with the CFPB Complaint and CFPB Action;

b. Defendants have a duty to reimburse Plaintiffs for all Defense Costs incurred to date;

c. The Professional Services exclusion does not eliminate Defendants' obligations to defend the Plaintiffs and/or to reimburse the Plaintiffs for Defense Costs incurred to date that are in excess of the retention;

d. Federal has breached its duty to defend Plaintiffs in connection with the CFPB Complaint and CFPB Action; and

e. As a result of its breach of its duty to defend Plaintiffs, Federal has forfeited any rights it may have had to control the defense of

the CFPB Complaint and the CFPB Action and any rights to question the reasonableness of the Defense Costs incurred.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the Court to enter judgment in its favor and against Defendants as follows:

(a) With respect to Count I, entry of an Order awarding monetary damages against Federal for breach of contract in an amount to be determined at trial, including pre- and post-judgment interest;

(b) With respect to Count II, entry of an Order awarding monetary damages against Federal for its bad faith conduct, including compensatory damages for bringing this lawsuit and for bringing this bad faith claim, as well as punitive and consequential damages;

(c) With respect to Count III, entry of an Order declaring that:

i. Defendants have a duty to defend Plaintiffs in connection with the CFPB Complaint and the CFPB Action;

ii. The Professional Services exclusion does not eliminate Defendants' obligations to defend Plaintiffs and/or to indemnify Plaintiffs; and

iii. Federal has breached its duty to defend Plaintiffs in connection with the CFPB Complaint and CFPB Action;

(d) Entry of an Order awarding Plaintiffs their costs and expenses, including but not limited to their attorneys' fees, in bringing and pursuing this action;

(e) Entry of an Order awarding Plaintiffs pre-judgment and post-judgment interest; and

(f) Entry of an Order awarding Plaintiffs any other and further relief to which it is entitled or to which the Court deems just and appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury of twelve for any and all issues so triable.

Dated: March 26, 2025

/s/ *William J. Burton*
William J. Burton (No. 6243)
BARNES & THORNBURG LLP
222 Delaware Ave., Suite 1200
Wilmington, DE 19801
Tel.: (302) 300-3447
E-mail: william.burton@btlaw.com

- Of Counsel -

Lilit Asadourian (*pro hac* forthcoming)
Alice Kyureghian (*pro hac* forthcoming)
BARNES & THORNBURG LLP
2029 Century Park East, Suite 300
Los Angeles, CA 90067
Tel.: (310) 284-3786
E-mail: LAsadourian@btlaw.com
E-mail: AKyureghian@btlaw.com

Kelly K. Koss (*pro hac* forthcoming)
BARNES & THORNBURG LLP
One N. Wacker Drive, Suite 4400
Chicago, IL 60606
Tel.: (312) 214-8825
E-mail: kelly.koss@btlaw.com

*Attorneys for Plaintiffs*